FIRST TRUST JOINT STOCK LAND BANK of Chicago, a Corporation, Appellant, v. ADOLPH P. ARP et al., Appellees.

No. 44163.

JANUARY 10, 1939.

Hoersch & Hoersch, Cook & Balluff, and Clark O. Filseth, for appellees.

1332

Shannon B. Charlton, Smith & O'Connor, H. H. Lommen, and William B. Schroder, for appellant.

John H. Mitchell, Attorney General, Henry J. Roelofs, Spec. Asst. Attorney General, and Charles W. Wilson, Asst. Attorney General, Amicus Curiae.

PER CURIAM—This is the first case presented to us questioning the constitutionality of the last Act of the Legislature reenacting and extending the provisions of prior Moratorium Acts, in which a record was made upon which we could base a judgment or conclusion as to the constitutional questions involved. In the instant appeal question is made as to the legality of the act in question, on grounds as to the form of the legislative act: That it embraced more than one subject; that the subject-matter was not properly embraced in the title; that the act in question was in exercise of judicial power by the legislative branch of the state government in that it continued in force prior court orders, and providing for the automatic refiling of applications for continuances; and that it denies the court the right to deny a continuance because of inadequacy of security and insolvency of the debtor; that it provides for an unwarranted classification of creditors and takes property without due process of law. We do not deem it necessary to comment or pass upon any of the above recited questions in determining this appeal.

■ We feel that the appeal should be determined directly upon the question that the Act is unconstitutional because it impairs the obligation of contracts in contravention of and repugnant to article 1, section 10, of the Fourteenth Amendment to the Constitution of the United States, and article 1, sections 9 and 21, and article 12, section 1, of the Constitution of the State of Iowa.

Briefly, moratorium legislation first occurred in this state during the session of the 45th G. A. and what is now generally known as the first Moratorium Act was passed by that assembly as chapter 182, on February 9, 1933. This act was re-enacted and extended by chapter 115 of the Acts of the 46th G. A., effective February 8, 1935, and again was re-enacted and extended by Senate File 15 of the 47th G. A., which became effective February 19, 1937. These acts provided for continuances

of pending mortgage foreclosures and extension of the time of redemption from execution sales.

The appellant raises the further objection in this appeal that these acts, especially Senate File 15 of the 47th G. A., are unconstitutional and invalid because it is not a proper exercise of the police power: (a) in that no emergency existed to warrant resort to the reserve police power; (b) that the relief provided is not limited to the duration of any alleged emergency and is not temporary in character.

We feel that we are foreclosed from considering these Moratorium Acts other than the last one enacted, namely, Senate File 15 of the 47th G. A., for the reason that in a very able and extended opinion former Justice Kindig, speaking for a majority of the court, held in Des Moines Joint Stock Land Bank v. Nordholm, 217 Iowa 1319, 253 N. W. 701, that the so-called first Act of February, 1933, was constitutional, basing such final determination upon the fact that an emergency existed in the state which called for an exercise of the reserve police power, and that such act, being based upon the exercise of that power, should be held constitutional. In this the court followed the pronouncements of the Supreme Court of the United States in Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481. In several cases which have come to us since the Nordholm case, constitutional questions similar to those here involved have been presented, but with not a sufficient record in any of the cases upon which to determine such questions. In the instant case we have such a record.

We held in the Nordholm case, supra, in effect, that in exigencies arising out of a great emergency, contract rights and vested interests must yield to the paramount right of the State, through its reserve police power, to protect by legislation its sovereignty, its governmental organization, its people, and their general welfare, and this, regardless of the declaration of the Constitution of the United States that no state shall pass any law impairing the obligation of contracts, and regardless of any provision of the Iowa Constitution.

In 1933, at the birth of the first Moratorium Act, the state, as well as the nation, was confronted with a great emergency: Banks were closed; home owners and farm owners were being ousted from their homes and farms through foreclosure pro-

ceedings; farm strikes existed; open, defiant and militant resistance to courts and court orders and decrees was in evidence; labor was unemployed; there was scarcely any price or market for farm products; and the health and social welfare of the people, as well as the sovereignty and perpetuity of organized government was seriously menaced and in the balance. In the presence of such conditions it is fair to conclude, as did the Legislature of this State, that a great temporary emergency existed, and that the exercise of the reserve police power was necessary to prevent a collapse of our constitutional government. Under such existing conditions the chief executive of the state declared the existence of a great emergency and asked the legislature to provide a remedy. The legislature in providing a remedy and enacting the so-called Moratorium Act also declared that an emergency existed, and this court took judicial notice of the conditions existing and sustained that Act of the Legislature.

We held in the Nordholm case, supra, that the act was not unconstitutional but we modified the judgment to the extent "that if the emergency passes before the expiration of the act, March 1, 1935, then the appellant shall have the right to have the order for the extension changed." 217 Iowa 1333, 253 N. W. 708. We quoted in this connection from the Blaisdell case, supra, 54 S. Ct. 241, as follows:

" 'While the declaration of the Legislature as to the existence of the emergency was entitled to great respect, it was not conclusive; and, further, that a law "depending upon the existence of an emergency * * * to uphold it may cease to operate if the emergency ceases * * * even though valid when passed." It is always open to judicial inquiry whether the exigency still exists upon which the continued operation of the law depends.' "

■ Emergency in order to justify the intervention of the reserve police power must be temporary or it cannot be said to be an emergency. If a so-called emergency exists beyond a temporary period then it is no longer an emergency but a status and can furnish no basis or authority for legislative action in contravention of or inconsistent with the provisions of the State and Federal constitutions. The existence of an emergency is necessarily a fact question. While declaration of the execu-

tive and pronouncements of the legislature are entitled to great weight and should be carefully considered, yet, the fact question still exists, and this can be determined by record facts, history of current events, and common knowledge and information. In other words, a court, in determining the existence of an emergency may and should take judicial notice of conditions existing at the time the emergency or its continued existence is questioned.

It must be conceded, as we held in the Nordholm case, supra, that an emergency existed in 1933, sufficient to sustain the act of the legislature in enacting the so-called Moratorium Act, but it cannot be said that by reason of such conditions moratorium acts could be re-enacted covering a period of six years, as has been the case in this state. In the instant case the record shows, without controversy, that practically all of the depressed conditions existing in 1933, do not exist at this time. And the court can and does take judicial notice of such fact. Farm values have been bettered; the price of farm produce has increased; the banking situation has been made stable and secure, and no orgy of bank failures and receiverships longer exists; thousands of Iowa farm homes that were under foreclosure proceedings have been refinanced through the government and other agencies.

The Supreme Court of the United States has in the ''lease cases'' and the cases involving the extension of the Emergency Housing Act, recognized and announced this rule of judicial notice as to the existence or continuance of an emergency sufficiently serious and acute to sustain a legislative enactment based wholly upon the exercise of the police power.

And where the question is only whether this statute is in force today, upon the present record and the facts we judicially know, we are compelled to say that the law has ceased to operate, and restating the principle that moratorium legislation is not valid and cannot be sustained unless based upon an existing emergency, we must hold that no emergency now exists, and that it did not exist at the time of the enactment of Senate File 15, and that the trial court erred in sustaining the act and in granting the continuance in this case. Helvering v. Davis, 57 S. Ct. 904, 301 U. S. 619, 81 L. Ed. 1307, 109 A. L. R. 1319; Home Building & Loan Assn. v. Blaisdell, 54 S. Ct. 231, 290

1336

U. S. 398, 78 L. Ed. 413, 88 A. L. R. 1481; Des Moines Joint Stock Land Bank v. Nordholm, 217 Iowa 1319, 253 N. W. 701. —Reversed.

This opinion was written by Justice Anderson while a member of the court, and is adopted by the court as its opinion.